The Fourth District Appellate Court of the State of Illinois has reconvened. The Honorable Thomas M. Harris presiding. Good afternoon, counsel. This is case number 4-24-1163, Peeble v. Jordan Spates. Could we proceed with appearances? First for the appellant. Yes, your honors. My name is Stephen Richards. I represent the appellant in this case, Jordan Spates. All right, thank you. And for the appellee? My first name is Allison Page. My last name is Brooks, and I represent the people. Thank you. Mr. Richards, you may proceed with your argument. Thank you, your honors. As you know, Jordan Spates was convicted of attempt for extreme murder of a police officer and sentenced to 76 years at 85 percent time, essentially a life sentence. I'd like to concentrate, although all the issues are interrelated, I'd like to really concentrate on issue number two, which is whether the trial court erred by denying Jordan Spates' motion to suppress deputy rights pretrial and in-court identifications. And this argument, in turn, I divided into two parts. One was the constitutional standards, focusing on the U.S. Supreme Court cases, and the second was on the Illinois lineup statute. But I'd like to sort of reverse that order and first begin with the lineup statute, which I think is the critical issue in this case. This is a case, I would say, a first impression, unique in terms of the case law and extraordinarily important, because in this case, we had a there was a concession that the Illinois lineup statute, which has a number of requirements to try and make pretrial identification procedures more trustworthy and more fair. There was a concession and the trial court found that the not only was the identification suggestive, but the state had failed to comply with all of the requirements of the Illinois lineup statute. There's not a single requirement that they met. Here you have a case where. First of all, a police officer is in hospital. The shooting is extremely recent. No suspect is in custody, so there's no need to exonerate somebody who might be being held when he shouldn't be. And there's absolutely no excuse why a photo array couldn't have been constructed once it was determined that Jordan Spates was a suspect. Instead, only photographs of Jordan Spates were shown to Deputy Wright. They were careful not to use the the license photo, which would have been the fruit of a poisonous tree of an illegal search, but other photos. And that is what happened. He identified identified them and all the requirements of the statute, which are all designed to make sure that we have proper lineups or photo arrays were not were not followed. Mr. Richard. Sorry. OK, noncompliance established the statute itself, though, in terms of the consequence of noncompliance. Does it say anywhere in there that any noncompliance requires suppression? No, it says that it does not say any noncompliance requires suppression. What it says is that it's a factor to be noncompliance is a factor to be used by the judge in determining whether there should be suppression. And isn't that what happened here? Well, what happened is the judge did look at the factors, but our contention would be that if it's given that there is total noncompliance and given that there is no excuse for noncompliance and given the fact that the base there the basis for the identification was weak under these circumstances, which, as I say, are almost unique, he should have suppressed. Well, it sounds like you're adding a requirement to the statute. And maybe this is, you know, you're going to address this when you get into the constitutional argument. But you've agreed that there's nothing that explicitly requires the court order suppression when there's any noncompliance. You're indicating when there's no compliance at all with the statute that that should require suppression. But the statute doesn't say that. Is that fair? Almost. We would say that where there's total noncompliance and there's a weak case for an independent basis and where, given the constitutional factors, which I'll get into, there is a strong probability that the idea is the result of the suggestion rather than an independent basis. Under those circumstances, where all those things come together, suppression should be required. And let me just turn it around for a minute. If under all these circumstances where there's total noncompliance, it's not just one or two things that are left out and it's a questionable identification such that the constitutionality of the identification is called into question. What possible incentive is there for police to follow the statute if the identification is going to come in anyway? And without accusing anyone of anything, this was a case where the obvious motive for not following the statute was who the victim was. It was a police officer and these were police officers investigating and they admitted they knew about the statute. They knew they admitted they didn't follow it. Obviously, their purpose was to secure the identification of the person they thought was guilty and not to have take the chance that Officer Wright, looking at a proper photo array, wouldn't pick out Jordan Spades. And I think Your Honor should find that extremely troubling and should hold that in these circumstances, these narrow circumstances, the statute requires that there be suppression. Now, of course, not every case. I mean, it could be that the Officer Wright could have viewed Jordan Spades in broad daylight for 30 minutes. And in that case, had none of the statutory requirements been met, there would have been an independent basis and it would be no harm, no foul. But here there was a harm and there was foul. That's our position. And I'm not sure how I can make that clear, but I think it's a reasonable position to take and one we would urge the court to take. The noncompliance was brought to the jury's attention, correct? And by way of an instruction by the court. It was. And the statute does provide for that possible remedy. But we think that in circumstances like these with total noncompliance and with the constitutionality of the procedure endowed and no excuse that their identification should have been suppressed. And as I said, it's a narrow position. It fits the facts of this case. I'm not sure there are ever going to be many more cases out there that it would fit, but it does fit this one. The other part of my argument is I went back to the U.S. Supreme Court cases from way, way back. The Foster case, bigger is Manson versus Brathwaite. What I pointed out there was that this is all those cases where they said, except for Foster, they said the identifications could come in. This case is closer to Foster than the other Supreme Court cases for a number of reasons. One are the considerations which are similar to those in the statute, which the Supreme Court looked at, such as, is there an excuse for the defect in the procedure? Is there something to and in each of those cases, there was some reason. There was something going on that explained why the police acted, why they did. Here, there's not zero. The other factors, of course, are the familiar beggars factors, which I'm sure the court is well aware of, such as opportunity of view, the critical one here. Very poor opportunity of view, matter of seconds, dark, officer fumbling for his flashlight. Put it this way, maybe he saw Jordan Spades or whoever the person that was out there, maybe he saw that person for long enough to identify him under circumstances, or maybe he identified him because the only photo he was shown was a photo of Jordan Spades. That is so strong a possibility in this case that the identification should be suppressed. Well, at the time he was shot, he indicated he was about 15 feet from defendant, said the emergency lights were lighting up the area, and he was in the process of reporting the suspect's description on his radio at the time. Is that accurate? Yes, with a few additional facts. It's the lights were flashing, not a steady beam. He was searching for a flashlight, which indicates he thought he needed more help finding and seeing the person. It was a matter of seconds. And as you said, he was distracted. He was doing multiple things. He was looking for the person. He was obviously trying to protect himself. It's a dangerous situation. And he was also within those five to six seconds when I have to conclude that the identification he made would be accurate. And it's not a great opportunity to view. It's not great in terms of attention, although he's an officer obviously paying a lot of attention to things, but he's came out from trial, what at trial actually was kind of an abbreviated description, which goes into my first point. But the description was general. It's not inconsistent with Jordan Spates, but it's consistent with a lot of other people. So that factor is also one which militates against the identification being accurate. In terms of the time, it wasn't too long. That militates in favor of the identification being accurate. It wasn't six months or seven months later. But all in all, the identification was suspect enough that there is no independent basis and the identification should have been suppressed. Now, I'd also like to distinguish between your analysis under suppression and the analysis as reasonable doubt. For suppression, the state has not argued, unless I missed it, that it's harmless error. So the remedy for suppression would be a new trial. Now, at a new trial, the state would not be devoid of evidence. They have the DNA, they have the flipper witness, they have some other things. So presumably they would be going to trial again. If you accept our position as to reasonable doubt, of course, there is no trial. But the two analyses, although they overlap, are different because in terms of reasonable doubt, you're looking at the totality of the evidence. In terms of the suppression motion, you're looking at the things that we've talked about. So for all of those reasons, we think that the identification should have been suppressed. Now, the other issues have to deal with the expert. And I think I can leave those to the briefing unless the court has questions. We do think there was a misplay of how the expert was used and what the expert could testify to. And we think that the issue is preserved as to whether the expert could give an opinion as to whether the identification was reliable. Now, as your issue, that has not been resolved by People v. Lerma because Lerma only dealt with the general scientific evidence as to eyewitness identifications, not an expert who wanted to make an opinion as to a particular identification. As I said, that seems to have been excluded by the trial court, although possibly had defense counsel pushed a little bit, he would have been able to get it in, as he said at one point, either by hypotheticals or by some other means. But he didn't do that. And we think he was ineffective. So for all those reasons, Jordan Spate's conviction should be reversed and a new trial should be granted. And unless the court has other questions, I would reserve the balance of my time. I did have one question, please. In talking about the reasons to find, let me start again. Is there a policy reason that you are suggesting that we find under these, quote, narrow circumstances where there was no reason for the total noncompliance and not an independent basis? As I heard what you argued, the policy reason was that there would be no incentive for the police to comply with the requirements of the statute. Is what you're arguing that we should take into account a policy reason in making our decision here? Absolutely. I think you took the words out of my mouth. I think that statutes have to be interpreted with one thing in mind is policy. Obviously, a statute which has no remedy or right without a remedy is not what the law usually contemplates. And as I said, this is sort of a signal case. There are extreme circumstances. As I said, no one, it's a police officer being shot. The statute is clear as to what is to be done. And nothing that the statute says should be done is done. It seems to be a rush to, I don't want to say rush to judgment, but it seems to be police officers are convinced they know who the right guy is. Jordan Spades don't have probable cause to arrest him at that point and want probable cause. And the way they get it is by doing this procedure. And it's a procedure that doesn't comply with the statute. They have an extreme incentive not to comply. And if the message going forward is you don't have to comply and the only cost is going to be in jury instruction, which a jury may or may not follow, then they won't comply. And if they won't comply in this instance, what about the next case where maybe the incentive is different or a little bit less? Well, it's not that they get a total pass beyond obtaining a jury instruction, perhaps for the defendant. The defendant can argue the noncompliance and the court is to take that into consideration. So the court can suppress. You're saying the court must suppress, should be required in the event that there is total noncompliance. But even if there's, you know, in terms of incentives here, I'm not sure that there would be an incentive for the state or for the police to not comply with the statute when the statute explicitly allows for the court to take into account the noncompliance in determining whether suppression is appropriate. Your Honor, may I reply to that? Please. Well, I mean, put it this way. Let's say you decide against Jordan's case. Your opinion comes out tomorrow and in a week or so, or a month or so, or two months or so. And as your honors knows, whether your opinion is published or unpublished nowadays, hardly matters because everybody can find everything. And any police officer or police department researching it says, oh, okay. In situations where we really want to get an identification and we're really worried about lack of probable cause. And there's a good reason, like a police officer's involved or something else. Our chances of getting away with it are pretty good because we just got away with total noncompliance in the Jordan Spades case. So during the investigation of a crime, if we were to find, as you just described, that police officers would think back on this case and say, let's not comply with the statute. Yes. And I hate to say bad things about police officers or imply misconduct, but police officers have a job to do in their view to get convictions or to get the guilty people convicted. And if they can cut corners in this respect and know that they can get away with it, and the conviction is going to hold up, or at least the identification will hold up and be admitted. Human nature being what it is, I would say the incentives are on the wrong side. I think our entire system of government was founded by our founders were profoundly skeptical about human nature. They thought that the incentives for bad behavior were all the place, that human nature is not necessarily good and that you needed systems to restrain human nature and to have people do the right things. And that's why we have a whole panoply of things such as democracy and separation of powers and the rule of law and a good deal else. And this, I think, is a case about the rule of law. If the rule is established or the precedent is established that you might not get away with something like this, then the statute will be followed. And if not, I think the statute will not be followed. And that's the consequential decision I think your honors have to make. So I do have a follow-up question, please. Going back for just a minute to the question regarding policy reason that you think we ought to consider as a reason, non-compliance, I'm sorry, the policy reason you suggested we do consider in order to go ahead and suppress here. But if we did that, wouldn't we be reading language out of the statute, which is the language that says that the fact finder may take the non-compliance into consideration, which goes back to, I think, Justice Harris's initial questions or the gist of some of them. We'd have to read language out of the statute to do that. I don't agree. I think that there's a whole spectrum of cases. There's cases where only one or two, there's non-compliance on one or two factors. There's cases where the independent basis for the identification is strong. There's cases where there's some excuse for non-compliance. And many of actually the published opinions have been, I would characterize as kind of minor non-compliance, like somebody's, you thought they were independent administrator, but really they're not independent administrator, et cetera. So the intent of the statute is followed. It's saying that, we're not going to set a hard and fast rule that you have to do every last thing or else it's going to be excluded. But it seems to me reasonable where you do none of the things and the independent basis either is non-existent or weak, that a decision holding that under those circumstances, it would be an abusive discretion not to suppress would be justifiable. And I hope I've answered your question, but that's my take. Can I just say that something you just said made me think of this question, which is why resort to an argument that we should, from a public policy standpoint, require suppression if none of the factors in the statute are followed. Why not just argue it from the standpoint of, from a review of failure to suppress, you know, the trial, the appellate court will review de novo the trial court's ultimate decision and take into account as one of the factors that we would, whether or not the state had complied with the statute. If it's de novo review, I'm all for it. And I think your honors could say that under de novo review, since after, and I think de novo review is certainly not inappropriate because Well, let me just stop you there. Don't we review the trial court's findings of fact for manifest error, but the ultimate decision as to suppression de novo. Correct. Okay. And I would say in this case, and there's a, there's a developing body of law, I think as your honor knows about the line between de novo and manifest weight and so forth. But in this particular case, it doesn't look like what the trial court did rested a lot on credibility determinations at all. I think everybody was kind of, everybody's kind of agreed as to the facts as to how many seconds were the lighting conditions, everything else. So your honors, I think are in a very good position to debate a de novo judgment. And also to say, given the facts, the trial court found suppression in this case is required. All right, Mr. Richards, I apologize to my colleagues for going over time here. You are out of time and you will have additional time in rebuttal. Thank you, your honor. All right, Ms. Brooks, you might proceed. Thank you, your honors. May it please the court and counsel. Here the argument is that suppression be required because there would be a sort of a need to incentivize police departments to comply with the statute. Well, here the defendant got the consequences that are provided here. The state did risk suppression in the sense that the noncompliance was a factor that the court could consider in weighing a suppression motion. And then also there's a situation where the, so what happened is also they get the jury instruction. So there's essentially two hurdles, two landmines essentially that they would have laid in this case that the state has to get over both pre-trial and during trial as part of the consequences of noncompliance. So certainly in a closer case that would be a lot more consequential perhaps than here. But I think what the defendant's argument gets to is his idea that he says that the independent basis for the identification was weak and the state strongly disagrees with the characterization. And in fact, the trial court in dismissing and denying the constitutional challenge to suggestive identification procedure relied on the independent reliability of the identification. That's the reason why there's not really hardly any daylight in this case between the statutory and the constitutional analyses, because there was a strong independent reliability and independent basis for the identification under the five factors. Here the main one that the defense relies on is the limited opportunity to view, which despite some limitations of time and lighting, but the officer Wright has plenty of attention. He's pursuing this person, excuse me, and so his attention is very heavily focused, even if it's divided a little bit by other things like searching for a flashlight or something. I mean, he's still highly focused on this suspect. And then the accuracy of the prior description, this is major because the defendant had a tall, thin build that checked out completely. He even was found to have the same black and white shirt identified, kind of distinctive clothing that the officer found provided in the description was actually seen on a like a gas station surveillance video after the offense. So the defendant still had that same shirt. So that completely tracks as well. The certainty is there. Officer Wright was very certain. And the other thing is the length of time is only like 13 hours, which is pretty short compared to some of the cases that get into months or years. So I think most of these factors are pretty very heavily in favor of the state. And if even if one is mostly in the defendant's favor, that is the more limited opportunity to view. So the balance of these factors, I think strongly favor the state. And that's why the defendant's constitutional challenge failed. And that's also why his statutory challenge failed, because despite taking the complete noncompliance as a factor, these factors still heavily favor the state on balance, despite the inclusion of the limited opportunity view and the statutory noncompliance. So the defendant has not shown this to be against the manifest weight of the evidence. Here, the trial courts really did include credibility determinations in favor of the state's witnesses. So that's one reason not to imply a de novo review. I think suggesting that the ultimate issue of probable cause or reasonable suspicion is reviewed de novo, unlike the U.S. Supreme Court cases like Ornelas. I think that kind of filtered down to Illinois. That's to prevent there being sort of like a distinction between, in this case, the judge found no probable cause. In this case, the judge found reasonable suspicion. And that's sort of like you got conflicting results on similar facts. And the reason for de novo review of the ultimate question is kind of prevents similar cases from being decided differently by different trials of fact and different judges. So I think that that sort of idea of de novo review in this context doesn't really apply in the same situation as it would in terms of probable cause and reasonable suspicion, which the ultimate question is reviewed de novo. So in this situation, the evidence was also very strong in the sense that there's a lot of corroborating evidence inside the car. Pretty much everything in the front seat of that car attracted the defendant. Wright was shot with a .40 caliber, and there's a .40 caliber mag with latent print on it. Cell phone with defendant's DNA is on the actual driver's seat. And then there's soda pop cans and like console, defendant's DNA, ball cap on the passenger seat, defendant's DNA. Takeaway shopping bag has a defendant's print on it and a receipt that shows that that was from the same night as the shooting. And then, of course, then there's a latent, I'm sorry, the tacit admission that he made to Samantha Chavez. He was crying, said he messed up. And she said, I heard that you shot a police officer and then he cried and fled to Georgia. So kind of very, very strong case overall. And that also tracks to the idea that the defendant received ineffective assistance. Not only is everything is complaining about a matter of trial strategy, there was no prejudice possible because of the strength of the evidence. But also getting to the idea of Dr. White, the expert witness. First of all, the Corral case shows that Rule 402 does not, the idea that you can enter an ultimate opinion here would violate the rule that a witness cannot directly comment on the credibility of another witness. So I think Dr. White's correctly precluded from saying that he doesn't believe that Dr. White, I'm sorry, that Dr. White cannot testify that Wright, the eyewitness, provided an unreliable or incredible identification. So what Dr. White was correctly called for was just to talk about the, excuse me, to talk about the research. And when Dr. White is not even like going to the scene and like say, go at night and see how much moonlight there is and see what the oscillating lights look like and the headlights and the position of everything and then stand in Wright's position basically and say, yes, do you think that a person could have correctly identified the suspect fleeing at this point? But Wright wasn't asked to do any of that stuff. He was just simply asked about essentially research and scientific issues, which is all he's really qualified to talk about. So it was a matter of strategy what not to sort of have their expert go through more of a argument, I'm sorry, more of an analysis of the actual facts of this case. They should have even really gotten Wright. If you looked at the Lerma case, Dr. White should even testify because Lerma's case where the identification was like 100% of the case. And here you got all the physical evidence and the tacit admission. So it's essentially directly distinguishable. And this is not at all the type of case that would require expert testimony on identification, on eyewitness identification. And the last thing is about the sentencing. The defendant was a convicted felon. Wright did suffer a lot of pain and disability from this shooting. And so 75 years is definitely not an abuse of discretion. For all those reasons, the state would request this court to affirm the conviction and sentence. Thank you, Your Honors. Thank you, Ms. Brooks. Mr. Richards, rebuttal argument. Just a few points. As Your Honors I'm sure know, there was DNA from Jordan Spates in the car, but the critical DNA was the steering wheel and the gear shifter. And that DNA was inconclusive and suggested that it was another person who was driving the car, not Jordan Spates, even though the other evidence shows that he was in there at some point. Also, in terms of all these other what might be called corroborative details, the identification, the suggestive identification analysis has never used corroboration as part of the analysis. It's the identification, which is that issue when you're talking about suppressing the identification. All these other things go to whether there is proof beyond a reasonable doubt. And that's a separate and a different issue. So it doesn't really factor into the motion to suppress unless the state was making an argument as to harmless error, which I didn't see in their brief and I don't think they're doing. So since there's no harmless error issue, the suppression issue has to be confronted head on. And I trust your honors will do that. In terms of the comments upon Dr. Wright, as you can see from our brief, Dr. White, I'm sorry, as you can see from our brief, we disagree. I think it's an open question after Lerma as to whether an expert could give an opinion, not on the credibility of another witness, but on the reliability of an identification. And there's a distinction between the two. Yes, generally witnesses can't comment on the credibility of other witnesses, but under Rule 702 and Rule 703 and 4, an expert is not precluded from giving an opinion on the ultimate issue in the case, let alone a sub-issue as to whether a witness gave a reliable identification. So that ruling was wrong and it was a mistake of counsel not to go into, not to try to get it in, at least through a hypothetical. And therefore, Jordan Spates' conviction should be reversed and on the grounds we've argued remanded for a new trial. All right. Thank you, counsel. Thank you both. The court will take the case under advisement and we'll enter a written order. The court stands in recess.